UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY A. DELEON,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | Case No. EDCV 09-508 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I.    SUMMARY**

On March 16, 2009, plaintiff Randy A. DeLeon ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; March 24, 2009, Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about January 10, 2006, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 42, 98, 101). Plaintiff asserted that he became disabled on December 22, 2001, due to knee and back pain, anxiety and depression. (AR 130). The Administrative Law Judge examined the medical record and heard testimony from plaintiff (who was represented by counsel), plaintiff's niece, a medical expert and a vocational expert on December 5, 2007. (AR 5-31).

On January 7, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 42-54). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: musculoskeletal disorder involving aches and pains of the neck, low back, and knees; morbid obesity; and partial tear of the left rotator cuff (AR 45); (2) plaintiff suffered from non-severe impairments including depression (AR 45-46); (3) plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments (AR 46-47); (4) plaintiff could perform light work with several limitations[1] (AR 47); (5) plaintiff could not perform his past relevant work (AR 53); (6) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 53) and (7) plaintiff's allegations regarding his limitations were not entirely credible. (AR 49).

---

[1] Specifically, the ALJ determined that plaintiff had the residual functional capacity to perform light work, except plaintiff: (i) could not lift above waist level on his left side; (ii) could only occasionally stoop and bend; (iii) could not climb ladders, work at heights, or balance; (iv) could not do overhead work on his left side; (v) required the option to sit or stand; and (vi) could perform simple, repetitive tasks. (AR 47).

The Appeals Council denied plaintiff's application for review on February 4, 2009. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

///

  (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B. Standard of Review**

  Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Erred in Assessing a State Agency Physician's Opinion and the Court Cannot Find Such Error to Be Immaterial or Harmless

Plaintiff contends that a reversal or remand is appropriate because the ALJ erred in assessing the June 23, 2006 opinions of Dr. Skopec, a non-examining state agency physician, which were expressed in a Mental Residual Functional Capacity Assessment ("MRFC") form ("June Opinions"). (Plaintiff's Motion at 2) (citing AR 317-19). This Court agrees.

### A. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[2] See id.

While "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions." Social Security

---

[2] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

Ruling[3] ("SSR") 96-6p; see also 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence. . . ."); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.") (citation omitted).[4]

### B. Pertinent Facts

On May 1, 2006, Dr. Linda M. Smith, a psychiatrist and consultative examiner, conducted a complete psychiatric evaluation of plaintiff.  (AR 290-97).  Dr. Smith opined that plaintiff was not impaired in (i) his ability to understand, remember or complete simple commands; (ii) his ability to understand, remember or complete complex commands; (iii) his ability to interact appropriately with supervisors, co-workers or the public; (iv) his ability to comply with job rules such as safety and attendance; (v) his ability to respond to change in the normal workplace setting; and (vi) his ability to maintain persistence and pace in a normal workplace setting.  (AR 297).

In a May 17, 2006 Psychiatric Review Technique form, Dr. Skopec opined that plaintiff had (i) a medically determinable impairment (depressive disorder)

---

[3] Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007).

[4] The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

that was not severe; (ii) a mild degree of limitation in his activities of daily living; (iii) no limitations in maintaining social functioning, concentration, persistence or pace; and (iv) no episodes of decompensation ("May Opinions"). (AR 298-311).

In the June 23, 2006 MRFC form, Dr. Skopec offered opinions which were inconsistent with his May Opinions. More specifically, on June 23, 2006, Dr. Skopec opined that plaintiff had *moderate* limitations in his ability to (i) carry out detailed instructions; (ii) maintain attention and concentration for extended periods; (iii) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (iv) sustain an ordinary routine without special supervision; (v) work in coordination with or proximity to others without being distracted by them; and (vi) interact appropriately with the general public. (AR 317-18). This opinion was later characterized as an assessment for "SRT/NP [simple repetitive tasks/non-public] residual functional capability." (AR 409)

In December 2006, the conflict between Dr. Skopec's May Opinions and June Opinions was noted by a reviewing physician Dr. Amado, during the initial reconsideration of plaintiff's applications. (AR 409, 411). Dr. Amado indicated that "no clear explanation" was ever given for the discrepancy. (AR 409, 411). Dr. Amado also noted his agreement with the "non-severe" mental impairment assessment (consistent with the May Opinions), opined that "SRT/NP [simple repetitive task/non-public]" work was *not* precluded (as suggested by the June Opinions), but nonetheless affirmed the June 23, 2006 MRFC for "SRT/NP [simple repetitive task/non-public] residual functional capability. (AR 409-10).

At the administrative hearing, medical expert, Dr. Landau, when asked to identify plaintiff's medically determinable impairments, stated: "He has morbid obesity. He has a partial tear in the left rotator cuff. And he has aches and pains in the neck, low back and knees. He has psychiatric diagnoses." (AR 10). The ALJ inquired about limitations that Dr. Landau would impose on someone

7

with plaintiff's *physical* limitations.[5] (AR 7). Dr. Landau proceeded to list physical limitations which the ALJ ultimately included in his residual functional capacity assessment. (AR 11-12). In explaining how he had reached his conclusions regarding the requisite physical limitations, Dr. Landau identified and referred to multiple medical records and diagnoses. (AR 12-13). Among other reports and diagnoses, Dr. Landau referred to a "diagnosis of high blood pressure . . . citing depression[,]" and the fact that "[i]n [2004], [plaintiff] was under psychiatric care." (AR 12). In the course of referencing records from another doctor, Dr. Landau noted that such records were "[j]ust after the psychiatric consultative exam" which was not otherwise discussed by Dr. Landau. (AR 13). Dr. Landau was not specifically asked about what limitations, if any, he would impose on someone with plaintiff's *mental* impairment(s), and did not otherwise identify any mental limitations for plaintiff. (AR 10-14).

At the administrative hearing, plaintiff testified to the following information regarding his mental health: He was not then being seen by a doctor for mental health. (AR 15). In the last four years or so, he had seen a couple of doctors for mental health. (AR 15). He was supposed to be going to mental health all the time. (AR 15). He didn't know why he was not doing so. (AR 15). The longest period he saw a doctor for mental health was maybe a half a year. (AR 15-16). He was supposed to always see the doctor but stopped. (AR 16). The symptoms that led plaintiff to see a mental health doctor were anxiety and depression. (AR 16). One doctor told him that he might have been misdiagnosed and that, based on a test the doctor conducted, it appeared more as if plaintiff was bipolar. (AR 16). Plaintiff was currently taking medication for depression – Lexapro. (AR 16). Although the medication did not completely take away his anxiety and depression,

---

[5] At one point, the ALJ interrupted Dr. Landau's response to such question and then told Dr. Landau: "– go ahead. Any other limitations?" (AR 8). Dr. Landau continued with his explanation of plaintiff's physical limitations. (AR 8).

it helped a lot. (AR 16). The medication was prescribed by a doctor at Westside Clinic. (AR 17). His depression and anxiety interfered with his ability to sleep. (AR 21). When he could not sleep for two days, he heard weird things, but not voices. (AR 22). He had no mental health problems other than anxiety and depression. (AR 22).

The ALJ determined that plaintiff's depression was "non-severe [based] upon [the ALJ's] review of the State agency's psychiatric assessments and the consultative psychiatric evaluation report of Dr. Linda Smith." (AR 45). In accordance with regulations governing an ALJ's determination of the severity of a plaintiff's mental impairment, the ALJ expressly addressed plaintiff's degree of limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.[6] See 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d). As to the activities of daily living, the ALJ found that plaintiff has a mild limitation – a determination assertedly based upon Dr. Landau's testimony, plaintiff's testimony, Dr. Smith's report, and "the State Agency assessments." (AR 46) (citing, *inter alia*, Exs. 6F [AR 290-97; Dr. Smith's report], 7F [AR 298-311; Dr. Skopec's May Opinions], and 9F [AR 317-20; Dr. Skopec's June Opinions]). As to the other three areas, the ALJ found no limitations, assertedly based on the same evidence (*i.e.*, Dr. Landau's testimony, plaintiff's testimony, Dr. Smith's report, and the State Agency's assessments). (AR 46) (citing, *inter alia*, Exs. 6F [AR 290-97; Dr. Smith's report], 7F [AR 298-311; Dr. Skopec's May Opinions], and 9F [AR 317-

---

[6]If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in the ability to perform basic work activities. See 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d). Basic work activities include: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers and usual work situations; and (3) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

20; Dr. Skopec's June Opinions]).  The ALJ concluded that because plaintiff's medically determinable mental impairment caused plaintiff no more than mild limitations in any of the first three areas, and no limitations in the fourth area, his mental impairment was nonsevere.  (AR 46).

In making such assessment, the ALJ expressly stated that "substantial weight was being given to the opinions of Dr. H.M. Skopec, and consultative psychiatric examiner Linda Smith (Exs. 6F [AR 290-97; Dr. Smith's report], 7F [AR 298-311; Dr. Skopec's May Opinions], and 9F [AR 317-20; Dr. Skopec's June Opinions]) [who] both concluded the [plaintiff] does not have a severe mental impairment which causes a limitation and/or restriction having more than a minimal effect on his ability to do basic work activities (Id.)."  (AR 52).

In a later portion of the decision which addresses plaintiff's credibility, the ALJ observed:  "Dr. Landau indicated that his review of [Dr. Smith's] report revealed an inconsistent alcohol and drug history and no psychiatric diagnoses."[7] (AR 51).

### C.   Analysis

Plaintiff contends that a reversal or remand is appropriate because the ALJ erred in assessing the June Opinions of Dr. Skopec.  Defendant argues that a reversal or remand would not be appropriate because (i) substantial evidence supported the ALJ's conclusion that plaintiff suffered from a non-severe mental impairment; (ii) Dr. Skopec's June Opinions were not consistent with other evidence in the record and did not constitute substantial evidence; (iii) Dr. Skopec's June Opinions were superfluous and the MRFC in which such opinions are contained, need not even have been prepared in light of Dr. Skopec's May 2006 assessment that plaintiff's mental impairment was non-severe; and (iv) any error by the ALJ in not specifically addressing Dr. Skopec's June Opinions

---

[7]This finding is not supported by the record.

was harmless.  (Defendant's Motion at 4-5) (citing 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3)).

This Court concludes that the ALJ erred in his assessment of whether plaintiff suffered from a severe mental impairment because, although he cited to Dr. Skopec June Opinions and purportedly gave such opinions "substantial weight," the ALJ mischaracterized the June Opinions as supportive of his determination and made findings inconsistent with Dr. Skopec's June Opinions. The ALJ either did not recognize that Dr. Skopec's June Opinions were inconsistent with his May Opinions (and suggested greater limitations which, if given substantial weight, would likely have resulted in a determination that plaintiff had a severe mental impairment) or mischaracterized the June Opinions as supportive of the determination that plaintiff's mental impairment was non-severe and silently disregarded the June Opinions.  Either way, the ALJ erred, and the Court cannot find such error to be immaterial or harmless.

If the former, *i.e.*, if the ALJ did not recognize that Dr. Skopec's June Opinions were inconsistent with Dr. Skopec's May Opinions, it is appropriate to remand to permit the ALJ to reconsider his assessment that plaintiff's mental impairment is non-severe, in light of Dr. Skopec's June Opinions which appear to suggest otherwise.  Though this Court agrees with defendant's suggestion that ample evidence in the record supports the conclusion that plaintiff's mental impairment was non-severe, the Court cannot conclude that the ALJ would necessarily have so concluded if he had properly considered Dr. Skopec's June Opinions, particularly since the ALJ assertedly afforded Dr. Skopec's opinions "substantial weight."

If the latter, *i.e.*, if the ALJ mischaracterized and silently disregarded Dr. Skopec's June Opinions, it is appropriate to remand so that the ALJ can resolve the conflict between Dr. Skopec's May and June Opinions and explain why he rejected the June Opinions.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001)

(ALJ responsible for resolving conflicts in medical testimony and ambiguities) (citation omitted).  Although defendant offers reasons why it was arguably appropriate for the ALJ to reject Dr. Skopec's June Opinions, this Court is limited to the reasons articulated (or in this case, not articulated) by the ALJ.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); see also Stout, 454 F.3d at 1054 (ALJ, not the district court is required to provide rationale for rejecting evidence) (citations omitted).[8]

     To the extent defendant contends that the June Opinions were superfluous and need not have been considered (or expressly rejected) by the ALJ, this Court disagrees.  Respondent may well be correct that once the May Opinions were rendered regarding the non-severity of plaintiff's mental impairments, the Administration was not required to assess plaintiff's mental residual functional capacity which was specifically addressed in the MRFC which contained the June Opinions.  Here, however, the ALJ specifically cited to the June Opinions in support of his assessment that plaintiff did not suffer from a severe mental impairment.  Moreover, respondent offers no support for its suggestion that the June Opinions, once rendered, need not have been considered (or expressly rejected) by the ALJ in assessing whether or not plaintiff suffered from a severe mental impairment.  Rather, since the June Opinions were properly before the

///

---

[8]The Court also notes that the ALJ's reliance on Dr. Landau's testimony relative to plaintiff's mental impairments being non-severe appears to be misplaced.  As noted above, the record does not support the ALJ's assertion that Dr. Landau's "review of psychiatric consultative examiner Linda Smith's report revealed . . . no psychiatric diagnosis."  (AR 51).  Moreover, as also summarized above, the record does not reflect that Dr. Landau was asked about or offered *any* opinion regarding whether plaintiff suffered from any limitations as a result of his mental impairments.

ALJ, the ALJ was required to consider such evidence and explain the weight he afforded to such opinions. <u>Sawyer</u>, 303 Fed. Appx. at 455.

## V. CONCLUSION[9]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[10]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 24, 2010

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[9] The court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[10] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Immigration & Naturalization Service v. Ventura</u>, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).